UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:16-cv-02194-SDM-AEP

**KAREN WEBER,**

    **Plaintiff,**

v.

**NATIONSTAR MORTGAGE SERVICES LLC and VERIPRO SOLUTIONS INC.,**

    **Defendants.**

_____/

## MOTION TO DISMISS

Plaintiff Karen Weber claims defendants Nationstar Mortgage Services LLC (**Nationstar**) and Veripro Solutions Inc. (**Veripro**) tried to collect her mortgage debt even though they knew her lender had already forgiven it. This may be wrong—if it occurred as alleged. But "[e]very wrong does not bring with it the right to litigate in federal court." *Dodd v. Fort Smith Special Sch. Dist. No. 100*, 666 F. Supp. 1278, 1284 (W.D. Ark. 1987). Her allegations, accepted as true, show the Fair Debt Collection Practice Act does not provide a remedy for the alleged wrong. The statute expressly excludes from its reach "an alleged obligation," or debt, "which was not in default at the time it was obtained[.]" 15 U.S.C. §§ 1692a(5), (6)(F)(iii). The complaint alleges Ms. Weber's "alleged obligation" was not in default when Nationstar and Veripro obtained it. The FDCPA does not apply, and the federal courts lack supplemental jurisdiction over Ms. Weber's similar claims under the Florida Consumer Collection Practices Act. Ms. Weber may be able to seek relief in another court, but not in this

one. The complaint should be dismissed.

## BACKGROUND

Ms. Weber alleges she defaulted on her mortgage some time before August 22, 2011. (Doc. 1 ¶ 21.) Her lender, Bank of America, could have forced her to pay the entire unpaid balance on her first and second mortgage. It instead approved a short sale. (Doc. 1 ¶ 22.) The short sale agreement allowed Ms. Weber to sell her property in Ft. Lauderdale, Florida, for less than the amount she owed. Bank of America recorded satisfactions of both of Ms. Weber's mortgages and waived its right to seek a money judgment against Ms. Weber for the deficiency between the sale price and the outstanding balance on both mortgages. (Doc. 1 ¶¶ 24-25.) More than two years later, Nationstar allegedly began contacting her to collect the deficiencies on both mortgages. (Doc. 1 ¶ 26.) She claims Nationstar and its wholly owned subsidiary, Veripro, knew there was no mortgage debt to collect, but kept calling her anyway. (Doc. 1 ¶ 46.)

She brings a 19-count complaint against Nationstar and Veripro under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* (**FDCPA**), and Florida Consumer Collection Practices Act, FLA. STAT. § 559.72 (**FCCPA**). She seeks "damages" for various violations of both statutes, but does not allege any facts to show how the alleged errors actually injured her in a concrete way. *See*, *e.g.*, (Doc. 1 ¶¶ 49, 51, 53, 73, 81, 85.)

## ARGUMENT

**I. Nationstar and Veripro are not debt collectors under the FDCPA.**

Unlike the FCCPA, which regulates the conduct of every "person" collecting a consumer debt, the FDCPA regulates only the conduct of debt collectors. *Compare* 15 U.S.C. 1692c-f ("[A] debt collector may not . . ."); FLA. STAT. 559.72 ("In collecting consumer debts, no person shall . . ."). *See also Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D.

Fla. 2013) (stating the FDCPA regulates only debt collectors while FCCPA covers all persons collecting consumer debts).

The FDCPA defines debt collectors as a limited class, and under section 1692a(6)(A)-(F) "excludes several categories of persons, including 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.'" *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015); 15 U.S.C. § 1692a(6)(F)(iii). *See also* 15 U.S.C. §§ 1692a(5) (defining "debt" as an "alleged obligation" of a consumer in a transaction primarily for personal, family, or household purposes). "Thus, 'a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" *Deutsche Bank Nat'l Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013).

The complaint is premised on the allegation that Ms. Weber's alleged debt was "not in default" when Nationstar and Veripro began servicing it. The complaint alleges Ms. Weber defaulted on her mortgages held by mortgagee Bank of America. (Doc. 1 ¶¶ 21-22.) Bank of America then agreed Ms. Weber could sell the property at a loss, and after the sale closed, recorded satisfactions of both mortgages in October 2011. (Doc. 1 ¶¶ 22-25.) Two years later, around November 2013, the complaint makes clear that Nationstar began servicing the loan. (Doc. 1 ¶¶ 26, 27.) Nationstar allegedly transferred the loan file to Veripro in 2016. (Doc. 1 ¶ 42); (Doc. 1-6 at 2.) The "alleged obligation" was still not in default in 2016 when Veripro took over the account. FDCPA does not apply as a result. "[M]ortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012).

Ms. Weber may ask this Court to expand the definition of "debt collector" to include alleged debts that a person mistakenly believed to be in default, as the Sixth Circuit and other courts have done. The Sixth Circuit re-wrote the FDCPA to cover debt holders "that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012). *See also Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 538-39 (7th Cir. 2003) (same). But this Court should not re-write the statute simply because courts outside the Eleventh Circuit have done so.

The Sixth Circuit expanded the FDCPA because it found Congress intended the statute to be "an extraordinarily broad statute" and "thus [applied] the Act broadly according to its terms." *Bridge*, 681 F.3d at 362. The FDCPA may be broad in some respects, but the statute defines debt collector narrowly. Congress did so knowing federal law does not provide the exclusive remedy for debt collection errors. Congress recognized states could pass broader statutes, and provided room for states to do so under section 1692n. *See* 15 U.S.C. § 1692n ("[A] State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.").

The Sixth Circuit's decision rests on the suspicion that companies want to "weave a technical loophole into the fabric of the FDCPA big enough to devour all of the protections Congress intended in enacting that legislation." *FTC. v. Check Inv'rs, Inc.*, 502 F.3d 159, 172–73 (3d Cir. 2007). But that reasoning puts the cart before the horse. It assumes companies are escaping liability when, in fact, liability does not exist in the first place. If a loophole exists in the law, Congress, not the courts, can close it. Courts are not free to re-write a law to implement what it believes to be Congress's unwritten intent. Courts in this circuit must "presume that Congress said what it meant and meant what it said." *Davidson*, 797 F.3d at 1316 (declining to

expand definition of "debt collector" under FDCPA).  "[W]e are not permitted to 'do to the statutory language what Congress did not do with it.'"  *Id.*  The words of section 1692a(6)(F)(iii) are plain and should be enforced as written.  "[I]t is the actual status of the debt, and not the conduct of those seeking to collect, that determines whether a defendant falls within the FDCPA's definition of 'debt collectors.'"  *Dumont v. Litton Loan Servicing, LP*, 12-CV-2677-ER-LMS, 2014 WL 815244, at *18 (S.D.N.Y. Mar. 3, 2014).

This Court also should not depart from the statutory language where the Eleventh Circuit has expressly declined to do so.  *See Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928, 931 (11th Cir. 2015) ("[W]e need not analyze whether § 1692a(6)(F)(iii) applies when a bank assumes a debt 'thought to be in default,' as the Sixth Circuit did in *Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355 (6th Cir.2012), and as the Saint Vils ask us to consider.").[1]  This Court is also not bound by *Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760-T24-EAJ, 2006 WL 1992410, at *3 (M.D. Fla. July 14, 2006), which adopted *Schlosser*'s logic that companies "would have little incentive to acquire accurate information about the status of the loan" unless courts interpreted the FDCPA to expand the definition of debt collector.  *Id.* (citing *Schlosser*, 323 F.3d at 538).  This assumption rests on the mistaken belief that federal law provides the only remedy for debt collection errors, and ignores the many incentives companies have to correct alleged errors.  Companies will correct these errors to avoid lawsuits under state law and

---

[1] The district court in *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1237 (S.D. Fla. 2015) incorrectly found the Eleventh Circuit in *Davidson* had reached this issue.  Not so. *Davidson* turned on the threshold question of what constitutes a debt collector without analyzing whether the exclusion in section 1692a(6)(F)(iii) covered debts mistakenly treated as being in default.  Both the Eleventh Circuit and district court in *Davidson* passed over this issue—assuming the debt was in default without deciding whether it was—because the defendant in *Davidson* did "not assert that it is entitled to the § 1692a(6)(F) exception based upon non-default by Plaintiff" and waived this issue on appeal.  *Davidson v. Capital One Bank (USA), N.A.*, 44 F. Supp. 3d 1230, 1238 n.8 (N.D. Ga. 2014).

common law doctrines, regulatory complaints and investigations, reputational damage, and waste of its own resources. *Belin* also turned on a pleading issue not present here; the *Belin* court did not accept allegations outside the complaint's four corners in partially denying the motion to dismiss. *Id.* at *3.

**II.   The Court should decline jurisdiction over the remaining state law claims.**

The Court should decline supplemental jurisdiction over the FCCPA claims if it dismisses the FDCPA claims. Congress permits a district court to decline supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3)-(2). The Court should do so here.

The complaint does not assert the Court has original jurisdiction over the FCCPA claims. No factual allegations support jurisdiction based on diversity of the parties under 28 U.S.C. § 1332(a). The complaint alleges no facts to show Ms. Weber suffered any damages, let alone damages exceeding $75,000 under § 1332(a).

The Supreme Court and Eleventh Circuit have both "cautioned courts against using this [supplemental jurisdiction] power 'in every case in which it is found to exist.'" *Ameritox Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 531 (11th Cir. 2015) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "[P]endent jurisdiction is 'a doctrine of discretion, not of plaintiff's right,' and should be exercised only when doing so would promote 'judicial economy, convenience and fairness to litigants.'" *Id.*

The Supreme Court has counseled if "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988) (stating "in the usual case in which all federal-

law claims are eliminated before trial" or "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain" a federal court should ordinarily decline supplemental jurisdictional over state law claims). Declining supplemental jurisdiction is the rule, not the exception. The rule applies with particular force where, as here, the Court can dismiss the federal claims at the beginning of the case.

None of the *Gibbs* factors—judicial economy, convenience, fairness, or comity—favor taking the extraordinary step of exercising supplemental jurisdiction over state claims that can be heard in state court. This case is in its early stages. The Court should not consume scarce resources deciding a state law case that can be decided just as conveniently and fairly in state court. Comity also weighs heavily against taking jurisdiction. State courts should ordinarily decide cases that turn purely on state law. *See Gibbs,* 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). And while this case may appear ordinary at the outset, the Court "must 'weigh . . . at every stage of the litigation'" whether to dismiss supplemental claims. *See Ameritox Ltd.*, 803 F.3d at 532. The case could raise novel or complex issues of state law later in the litigation and require dismissal after months of work and thousands spent in attorney's fees. *See* 28 U.S.C. § 1367(c)(1); *Ameritox Ltd.*, 803 F.3d at 541 (vacating judgment and remanding for dismissal for lack of supplemental jurisdiction after three years of litigation and ten-day jury trial).

### III. The complaint fails to plead how alleged statutory violations caused concrete injury.

The complaint should also be dismissed because it fails to adequately plead facts to state a plausible claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). None of the counts allege facts establishing how the alleged statutory violations caused Ms. Weber to suffer a concrete

injury.  No cause of action exists without plausible factual allegations establishing such an injury.  The Supreme Court in *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016), and Eleventh Circuit in *Nicklaw v. CitiMortgage, Inc.*, No. 15-14216, 2016 WL 5845682, at *3 (11th Cir. Oct. 6, 2016) (published opinion), have held "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement [and state a cause of action] whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *Nicklaw*, 2016 WL 5845682, at *3 (quoting *Spokeo*, 136 S. Ct. at 1549).  *See Spokeo*, 136 S. Ct. at 1549 (holding plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III").

None of the counts allege how Ms. Weber was injured by Nationstar's and Veripro's alleged actions.  Count III, for example, alleges Nationstar "made false, deceptive, or misleading misrepresentations," but does not allege how the misrepresentations harmed Ms. Weber.  (Doc. 1 ¶ 53.)  Ms. Weber was not deceived by the mistake; the complaint alleges she knew Nationstar had erred.  *See* (Doc. 1 ¶¶ 27, 30.)  She does not allege the error prevented her from getting a loan.  She does not allege Nationstar sued over the debt.  Counts IV to XIII and Counts XV to XIX allege different statutory violations for misrepresenting the debt or the defendants' intentions.  But none of the counts provide factual content to show how these alleged violations injured Ms. Weber in a concrete way.

The complaint operates on the premise, prevalent before *Spokeo*, that alleging a bare statutory violation suffices to state a cause of action in federal court.  That is not so.  "[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court."

*Nicklaw*, 2016 WL 5845682, at *3 (11th Cir. 2016) (dismissing claim that alleged bank violated New York state law requiring timely recording of mortgage satisfaction). Ms. Weber, like the plaintiff in *Nicklaw*, alleged only that the defendants violated a statute. She failed to allege she lost money, suffered financially, or that anyone even knew about the mistaken debt Nationstar and Veripro allegedly tried to collect. *Id.* Ms. Weber merely infers she was damaged and seeks "damages." *See, e.g.,* (Doc. 1 ¶¶ 48, 85.) Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action. *Iqbal*, 556 U.S. at 678.

Ms. Weber's harassment claims in Counts II and XIV fail for separate reasons. Neither count alleges any communication contained vulgar or abusive language. The counts also fail to allege how many statements or letters Ms. Weber received over a specific time period and cannot allege communications were frequent enough to constitute harassment. *See, e.g., Breeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1337-38 (M.D. Fla. 2011) (calls made every one to two days over five month period not harassing); *Waite v. Fin. Recovery Servs., Inc.*, No. 8:09-cv-02336, 2010 WL 5209350, at *5 (M.D. Fla. Dec. 16, 2010) *(*though the call log showed defendant placed up to 29 calls in a single month and up to four calls in a single day, nothing showed "the phone calls were intended to be annoying, abusive, or harassing"). The complaint infers at most that Ms. Weber received monthly statements and loss mitigation letters offering her repayment assistance. *See* (Doc. 1 ¶¶ 29, 33); (Docs. 1-4, 1-5.) Monthly statements and similar "minimally instructive means of communication" do not constitute harassment under the FDCPA. *See Leahy-Fernandez v. Bayview Loan Servicing, LLC,* 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (dismissing FDCPA based on monthly statements).

<u>CONCLUSION</u>

Congress did not create a federal cause of action to prosecute every mistake made in collecting a debt. Congress created a limited regime under the FDCPA, aware states might legislate more broadly on a local scale. The complaint writes itself out of the FDCPA's coverage. Neither Nationstar nor Veripro are "debt collectors" under the statute if the Court accepts the plausible factual allegations as true. The complaint alleges that at the time both Nationstar and Veripro obtained the alleged debt, the debt was not in default. The FDCPA does not apply, and the Court lacks supplemental jurisdiction over the FCCPA claims. The federal claims should be dismissed with prejudice for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the state claims should be dismissed without prejudice under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

Date:  October 24, 2016                              Respectfully submitted,

**AKERMAN LLP**

By: */s/ David A. Karp*
    HEATHER L. FESNAK
    Florida Bar No. 85884
    Primary e-mail: heather.fesnak@akerman.com
    Secondary e-mail:  marykay.siegel@akerman.com
    DAVID A. KARP
    Florida Bar No. 069226
    Primary e-mail: david.karp@akerman.com
    Secondary e-mail:  sharon.wells@akerman.com
    401 E. Jackson Street, Suite 1700
    Tampa, FL  33602-5250
    Telephone:  813-223-7333
    Facsimile:  813-223-2837

    – and –

    WILLIAM P. HELLER
    Florida Bar No. 987263
    Primary e-mail: william.heller@akerman.com
    Secondary e-mail: lorraine.corsaro@akerman.com
    Las Olas Centre II, Suite 1600

350 East Las Olas Blvd.
Fort Lauderdale, Florida  33301-2229
Telephone:  954-463-2700
Facsimile:  954-463-2224

***Attorneys for defendants Nationstar Mortgage Services LLC and Veripro Solutions Inc.***

## **CERTIFICATE OF SERVICE**

I certify on October 24, 2016, the foregoing was served through the Court's Case Management/Electronic Case Files system on plaintiff's counsel James S. Giardina and Kimberly Hamel Wochholz, The Consumer Rights Law Group, PLLC, 3104 W. Waters Avenue, Suite 200, Tampa, FL 33614-2877 [James@ConsumerRightsLawGroup.com, Kim@ConsumerRightsLawGroup.com].

*/s/ David A. Karp*
Attorney